JEFFREY D. OLSTER
Nevada Bar No. 008864
Jeff.Olster@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Tel:  702-893-3383
Fax:  702-893-3789_____
Attorneys for Plaintiffs
*TRANSPORTATION INSURANCE COMPANY and*
*CONTINENTAL CASUALTY COMPANY*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TRANSPORTATION INSURANCE COMPANY, an Illinois corporation, and CONTINENTAL CASUALTY COMPANY, an Illinois corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>CASH 1, LLC d/b/a Cash 1, a Nevada limited liability company; and SHARON PRATT, a Nevada resident,<br><br>Defendants. | Case No.<br><br>**PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY DEMAND** |

Plaintiffs Transportation Insurance Company ("TPI") and Continental Casualty Company ("CCC"), foreign companies, seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure for purposes of determining a question of actual, immediate controversy between the parties.  Plaintiffs respectfully allege as follows:

## I.       NATURE OF ACTION AND RELIEF SOUGHT

1.       This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining the parties' rights and obligations, if any, with regard to an insurance policy.

2.       Plaintiffs seek a declaration that they have no duty to defend or indemnify Cash 1, LLC d/b/a Cash 1 ("Cash 1") with regard to a putative class action lawsuit filed against Cash 1 and others, captioned *Bates v. Dollar Loan Center, LLC d/b/a Dollar Loan Center d/b/a Loan Shack,*

1  Case No. 2:13-cv-01731-KJD-CWH, by Sharon Pratt and others, which is pending in the United

2  States District Court for the District of Nevada (hereinafter the "Underlying Suit"), and which was

3  filed on or about September 20, 2013.

4        3.     Cash 1 tendered the Underlying Suit to TPI and CCC and requested defense and

5  indemnity coverage for the Underlying Suit under a primary liability policy issued by TPI to CM

6  Retail Management, Inc. (CM Retail) and Cash 1 ("the TPI Primary Policy") and a commercial

7  umbrella policy issued by CCC to CM Retail ("the CCC Umbrella Policy") (hereinafter jointly "the

8  Policies").

9        4.     TPI and CCC disclaimed coverage, including any duty to defend Cash 1 in the

10  Underlying Suit, under the Policies.

11        5.     An actual, immediate controversy exists among the parties regarding whether

12  insurance coverage is afforded to Cash 1 under the Policies for the claims asserted and the alleged

13  damages sought against Cash 1 in the Underlying Suit.

14  **II.      THE PARTIES**

15        6.     Transportation Insurance Company ("TPI") is a corporation organized and existing

16  under the laws of Illinois with its principal place of business in Chicago, Illinois.

17        7.     Continental Casualty Company ("CCC") is a corporation organized and existing under

18  the laws of Illinois with its principal place of business in Chicago, Illinois.

19        8.     Cash 1, LLC ("Cash 1") is a limited liability company, with its principal place of

20  business in Nevada.

21        9.     Sharon Pratt is a resident of Nevada.  Because Ms. Pratt initiated the Underlying Suit

22  against Cash 1, she is a necessary party and is named in this declaratory judgment action so that she

23  will be bound by any judgment rendered herein.

24  **III.     JURISDICTION AND VENUE**

25        10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is

26  complete diversity of citizenship among the parties and the matter in controversy exceeds the sum of

27  $75,000, exclusive of interest, attorney's fees and costs.

28  4830-5523-3814.1

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

### IV.     THE UNDERLYING SUIT

12.     The Underlying Suit was filed in the United States District Court for the District of Nevada on or about September 20, 2013.  (A true and correct copy of the complaint filed in the Underlying Suit [the "Underlying Complaint"] is attached as **Exhibit A**.)

13.     The Underlying Suit was filed by several plaintiffs, including Ms. Pratt.  Only Ms. Pratt files this suit against Cash 1 as a putative class action.

14.     With respect to Cash 1, the Underlying Complaint contains allegations of negligent violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"); willful violations of the TCPA; and violations of Nevada Deceptive Trade Practices Act, NRS 41.600(2)(e) ("the DTPA").  (Ex. A, ¶¶ 231 – 243.)

15.     Ms. Pratt brings the Underlying Complaint against Cash 1 on behalf of herself and as a putative class action on behalf of the "Cash 1 Class Members."  (Ex. A, ¶ 180.)

16.     The Underlying Complaint contains allegations that the Underlying Defendants, including Cash 1, "negligently, knowingly and/or willingly, invad[ed] Plaintiffs' privacy by using an automatic telephone dialing system ("ATDS") to initiate a telephone call to Plaintiffs on their cellular telephones without prior express consent in violation of the Telephone Consumer Protection Act ('TCPA)."  (Ex. A, ¶ 4.)

17.     The Underlying Complaint contains allegations that Cash 1 "is primarily involved in the business of providing short-term, high interest loans to its customers" and that the "Cash 1 application for a loan requires each prospective borrower to provide contact information and three references."  (Ex. A, ¶¶ 125 – 127.)

18.     The Underlying Complaint contains allegations that Cash 1 "will not approve a loan without the names of at least three references that can be verified," and that Cash 1 does not contact the references to verify the information provided in the borrower's application.  Instead, Cash 1 verifies the "[r]eferences identity and phone number for the purpose of harassing the References if

1    the borrower defaults on the loan payment."  (Ex. A, ¶¶ 130, 132.)

2        19.     The Underlying Complaint contains allegations that when a borrower defaults on a

3 loan, "Cash 1 or its agents attempts [*sic*] to collect the loan" and "contacts the References provided

4 by the delinquent borrower at the phone number the borrower provided on his or her Cash 1 Loan

5 Application."  The Underlying Complaint also contains allegations that, "[o]n information and belief,

6 Cash 1 uses an ATDS to call a borrower's References if the account becomes delinquent" and that

7 Cash 1 and its agents "do not obtain the References consents [*sic*] before using an ATDS to call their

8 cellular phone numbers."  (Ex. A, ¶¶ 134 - 137.)

9        20.     Per the Underlying Complaint, in January 2013, Ms. Pratt "received numerous

10 telephone calls on her cellular telephone from an individual purporting to call on behalf of Cash 1

11 regarding the debt of her friend, Latoya Johnson."  The Underlying Complaint contains allegations

12 that Cash 1 told Ms. Pratt that the calls to her cellular telephone would continue until Ms. Johnson

13 repaid her debt, Cash 1 continued to call Ms. Pratt's cellular telephone despite her request that Cash

14 1 cease all contact, and, upon information and belief, Cash 1 used an ATDS to contact Ms. Pratt's

15 cellular telephone.  (Ex. A, ¶¶ 140-144.)

16        21.     Per the Underlying Complaint, Ms. Pratt, referred to therein as the "Cash 1 Class

17 Representative," brings the Underlying Suit on behalf of herself and the Cash 1 Class, which is

18 defined as:

19
20       All persons within the United States who, on or after September 20, 2009, received a
non-emergency telephone call from Cash 1 to a cellular telephone:

21          1.   That was placed using an automatic telephone dialing system or an artificial
prerecorded voice;

22          2.   Regarding a borrower other than the recipient of the call; and

23          3.   Who did not provide prior express consent for such calls.

24 (Referred to in the Underlying Complaint as the "Cash 1 Class Members").  (Ex. A, ¶ 180.)

25        22.     Count 10 of the Underlying Complaint contains the allegation that Cash 1 negligently

26 violated the TCPA by using an ATDS to contact "the Cash 1 Class Representative and Class

27 Members on their cellular telephones, without obtaining the express consent of the Cash 1 Class

28 Representative and Class Members, in violation of the TCPA."  As relief for this Count, Pratt and

1  the Cash 1 Class seek statutory damages of $500 for "each and every call in violation of the TCPA"

2  and injunctive relief.  (Ex. A, ¶¶ 231-234.)

3          23.     Count 11 of the Underlying Complaint contains the allegation that Cash 1 knowingly

4  and/or willfully violated the TCPA by using an ATDS to contact "the Cash 1 Class Representative

5  and Class Members on their cellular telephones, without obtaining the express consent of the Cash 1

6  Class Representative and Class Members, in violation of the TCPA."  As relief for this Count, Pratt

7  and the Cash 1 Class seek statutory damages of up to $1,500 for "each and every call in violation of

8  the TCPA" and injunctive relief.  (Ex. A, ¶¶ 235-238.)

9          24.     Count 12 of the Underlying Complaint alleges that Cash 1 "willfully committed

10  act(s) of consumer fraud in violation of [Nevada's] Deceptive Practices Act (NRS 41.600(2)(e)) by:

11      a.    Knowingly making false representations in transactions to borrowers that 'references'
12            will be contacted for credit reference, when, in reality, Cash 1 would only contact the
              'references' if the borrower defaulted on his or her loan. *See* NRS 598.0915(15).

13      b.    Failing to disclose a material fact in connection with the lending of money to
14            borrowers by filing to disclose Cash 1 would contact the borrower's 'references' if
              the borrower defaulted on his or her loan. NRS 598.0923(2).
15

16      c.    Violating the TCPA by contacting the Cash 1 Class Members on their cellular
              telephones using an ATDS without their prior express consent. NRS 598.0923(2)."

17  (Ex. A, ¶¶ 239-40.)

18          25.     The Underlying Complaint contains an allegation in Count 12 that "Cash 1's acts of

19  consumer fraud caused the Cash 1 Class Representative and Class Members to suffer damage by

20  invading their privacy and causing them to incur additional cellular phone charges and/or lose their

21  allotted cellular telephone minutes.  *See* NRS 41.600(3)(a)."  As relief for this Count, Pratt and the

22  Cash 1 Class members seek injunctive relief and attorney's fees and costs.  (Ex. A, ¶¶ 241 - 243.)

### V.    THE POLICIES

#### A.    The TPI Primary Policy

23          26.     TPI issued a primary commercial general liability coverage to CM Retail

25  Management under policy number B 508555444 for the November 1, 2012 to November 1, 2013

26  policy period ("the TPI Primary Policy").  (A true and correct copy of the TPI Primary Policy is

28  attached hereto as **Exhibit B**.)  Cash 1 was added as an additional named insured to the TPI Primary

4830-5523-3814.1

Policy by a policy endorsement effective November 1, 2012. (See Ex. B, Additional Named Insured Endorsement Declarations, p. 2.)

27. The TPI Primary Policy provides Business Liability Coverage for "bodily injury," "property damage," and "personal and advertising injury" as follows:

**A. Coverages**

**1. Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **D** – Liability And Medical Expenses Limits Of Insurance; and

  **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses to which this insurance applies.

 No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

 **b.** This insurance applies:

  **(1)** To "bodily injury" and "property damage" only if:

   **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of

such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period . . .

(See Ex. B [Form No. SB-300000-C, p. 1].)

28.    The TPI Primary Policy defines "bodily injury" as:

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

(See Ex. B [Form No. SB-300000-C, p. 13].)

29.    The TPI Primary Policy defines "occurrence" as:

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(See Ex. B [Form No. SB-300000-C, p. 14].)

30.    The TPI Primary Policy defines "personal and advertising injury" as:

**14.**  "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.**  False arrest, detention or imprisonment;

**b.**  Malicious prosecution;

**c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**   The use of another's advertising idea in your "advertisement"; or

**g.**  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(See Ex. B [Form No. SB-300000-C, pp. 14 – 15].)

31.     The TPI Primary Policy defines "property damage" as:

**17.** "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(See Ex. B [Form No. SB-300000-C, p. 15].)

32.     The TPI Primary Policy contains the following exclusions applicable to the Business Liability Coverage.  The policy provides that "[t]his insurance does not apply to:"

    **a.  Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*   *   *

    **j.  Professional Services**

    "Bodily injury," "property damage," "personal and advertising injury" caused by the rendering or failure to render any professional service . . ."

*   *   *

4830-5523-3814.1

**p. Personal And Advertising Injury**

"Personal and advertising injury":

> **(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

> * * *

> **(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . ."

(See Ex. B [Form No. SB-300000-C, pp. 3, 7].)

33.    The TPI Primary Policy contains an exclusion, titled "Recording and Distribution of Material or Information in Violation of Law Exclusion" (hereinafter the "Recording and Distribution of Material Exclusion"), which applies to the policy's "bodily injury," "property damage," and "personal and advertising injury" liability coverage. The "Recording and Distribution of Material" exclusion provides in relevant part that:

> **A.** The following exclusion is added to Section **B.** EXCLUSIONS of the Businessowners Liability Coverage Form:

> **2.    Exclusions**

> This insurance does not apply to:

> **q. Recording and Distribution of Material Or Information in Violation of Law**

> "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

> **(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

> **(2)**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

> **(3)**    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4830-5523-3814.1

(4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.**    The following exclusion is added to Section B. EXCLUSIONS, Paragraph p. Personal and Advertising Injury:

**2.        Exclusions**

This Insurance does not apply to:

**(15) Recording and Distribution of Material Or Information In Violation of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(See Ex. B [Form No. SB-300849-A].)

**B.        The Umbrella Policy**

34.    CCC issued a Commercial Umbrella Plus policy to CM Retail under policy no. B 508555461 for the November 1, 2012 to November 1, 2013 policy period (hereinafter the CCC Umbrella Policy).  (A true and accurate copy of the CCC Umbrella Policy is attached hereto as **Exhibit C**.)

35.    The CCC Umbrella Policy contains the following insuring agreement, in which CCC agrees to provide umbrella coverage for "bodily injury," "property damage," and "personal and advertising injury" as follows:

4830-5523-3814.1

**SECTION I – COVERAGES**

**1. Insuring Agreement**

We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

**a.**      This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;

**(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**   With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

**(i)**      Prior to the policy period, no "authorized insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

**(ii)**     During the policy period, an "authorized insured" first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

For purposes of this Paragraph (1) a.(3) only, if (a) "bodily injury" or "property damage" that occurs during this policy period does not continue, change or resume after the termination of this policy period; and (b) no "authorized insured" first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

\* \* \*

**d.**   This insurance applies to "personal and advertising injury" caused by an "incident" committed anywhere in the world during the policy period.

(See Ex. C [Form No. G-15057-C, p. 1].)

36.      The CCC Umbrella Policy defines "bodily injury" as:

**3. "Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

4830-5523-3814.1

(See Ex. D [Form No. G-15057-C, p. 11].)

37.     The CCC Umbrella Policy defines "incident" as:

**9.  "Incident"**

    **a.**  With respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **b**. With respect to "personal and advertising injury," "incident" means an offense arising out of your business.

(See Ex. C [Form No. G-15057-C, p. 12].)

38.     The CCC Umbrella Policy defines "Personal and Advertising Injury" as:

**10.  "Personal and Advertising Injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    **a.**  False arrest, detention or imprisonment;

    **b.**  Malicious prosecution or abuse of process;

    **c.**  Wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

    **d**. Discrimination, unless such insurance is prohibited by law;

    **e.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **f.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **g**. The use of another's advertising idea in your "advertisement";

    **h.**  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(See Ex. C [Form No. G-15057-C, p. 12].)

4830-5523-3814.1

39.     The CCC Umbrella Policy defines "property damage" as follows:

**12.  "Property damage"** means:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.  (See Ex. C [Form No. G-15057-C, p. 13].)

40.     The  CCC  Umbrella  Policy  defines  "retained  limit,"  "scheduled  underlying insurance,"  "ultimate  net  loss,"  "underlying  insurer,"  and  "unscheduled  underlying  insurance"  as follows:

**16.  "Retained limit"** means the amount stated as such in the Declarations. The "retained limit" is retained and payable by the insured as respects all "incidents" not covered by "scheduled underlying insurance" or by "unscheduled underlying insurance."

**17.  "Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

**18.  "Ultimate net loss"**

**a.**  "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

**(1)**  Final adjudication on the merits; or

**(2)** Through compromise settlement with our written consent or direction;

because of "incident(s)" covered by this policy.

However,  it  includes  the  above  mentioned  sums  only  after  deducting  all  other  recoveries  and salvages.

**b.**  "Ultimate net loss" does not include the following:

**(1)** Costs or expenses related to:

4830-5521-9814.2

- 13 -

**(a)** Litigation;

**(b)** Settlement;

**(c)** Adjustment; or

**(d)** Appeals;

nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

**(2)** Pre-judgment interest;

**(3)** Office costs and expenses and salaries and expenses of the employees of an insured;

**(4)** Our office costs and expenses and salaries of our employees; or

**(5)** General retainer and/or monitoring fees of counsel retained by the insured.

**19. "Underlying insurer"** means an insurer whose policy covers "bodily injury," "property damage" or "personal and advertising injury" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy.  It includes all insurers providing:

**a.**   "Unscheduled underlying insurance"; and

**b.**   "Scheduled underlying insurance."

**20. "Unscheduled underlying insurance"**

**a.** "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

**(1)** Primary;

**(2)** Excess;

**(3)** Excess-contingent; or

**(4)** Otherwise;

4830-5525-3814 v.1
except the policies listed in the Schedule of Underlying Insurance.

**b.** "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

(See Ex. C [Form No. G-15057-C, pp. 13-14].)

41.     The CCC Umbrella Policy contains the following exclusions applicable to the Commercial Umbrella Plus coverage.  The CCC Umbrella Policy provides that "[t]his insurance does not apply to:"

**a.  Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.  This exclusion does not apply to Employers Liability claims for "bodily injury" covered by "scheduled underlying insurance."

\*   \*   \*

**c.  "Personal and advertising injury" Exclusions**

"Personal and advertising injury":

**(1)**  Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

\* \* \*

**(3)**  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . .

(See Ex. C [Form No. G-15057-C, pp. 1, 2].)

42.     The CCC Umbrella Policy contains the following "Do Not Call" exclusion, which applies to the Policy's "bodily injury," "property damage" and "personal and advertising injury liability" coverage.  This exclusion (hereinafter, the "Do Not Call" exclusion) provides that "[t]his insurance does not apply to:"

**bb. Do Not Call**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition

to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or the CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(See Ex. C [Form No. G-15057-C, p. 6].)

43.     The CCC Umbrella Policy contains a "Financial Service Company As Insured" endorsement, which provides in relevant part that "[t]his insurance does not apply to . . . "property damage," or "personal and advertising injury" arising out of:

* * *

3.     Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities of interbank transfers;

4.     Repossession of real or personal property from a borrower or acting as an assignee for the benefit of creditors;

5.     Checking or reporting of credit . . ."

(See Ex. C [Form No. G-147178-B].)

44.     Under Section II – the CCC umbrella policy contains the following "WHO IS AN INSURED" provision:

* * *

2.  Insured means the Named Insured and:

* * *

c. Any other persons or organizations included as an insured under the provision of the 'scheduled underlying insurance" shown in the Declarations of this policy and then only for the same coverage, except for limits of insurance afforded under such "scheduled underlying insurance."

(See Ex. C [Form No. G-15057-C, p. 7].)

45.     In addition to the foregoing provisions, TPI and CCC plead all other conditions, terms, warranties, limits, definitions and exclusions of the TPI Primary and CCC Umbrella Policies that may also be found to be applicable, as TPI's and CCC's investigation of this matter continues, and they reserve the right to further amend this Complaint as additional and/or more specific information becomes available.

4820-5522-3814.1

- 16 -

## COUNT I

### FOR DECLARATORY JUDGMENT THAT TPI
### DOES NOT OWE A DUTY TO DEFEND

46.     TPI hereby incorporates and re-alleges the allegations in paragraphs 1 – 45 above as if fully set forth herein.

47.     TPI does not owe a duty to defend Cash 1 in the Underlying Suit under the TPI Primary Policy for the following reasons:

a.     The Underlying Suit does not allege "bodily injury."

b.     The Underlying Suit does not allege "property damage."

c.     The Underlying Suit does not allege "personal and advertising injury."

d.     Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the primary policy period.

e.     Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the primary policy period.

f.     Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

g.     Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the primary policy period, which it does not, the "Recording and Distribution of Material" exclusion bars coverage.

h.     Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy period, which it does not, the "Recording and Distribution of Material" exclusion bars coverage.

i.     Even if the Underlying Suit alleged "personal and advertising injury" caused by an offense committed during the primary policy period, which it does not, the TPI Primary Policy excludes coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

j.     Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy period, which it does not, the TPI Primary Policy excludes coverage for "personal and advertising

4830-5523-3814.1

- 17 -

injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

k.    Even if the Underlying Suit were to seek damages for "bodily injury," or "property damage" caused by an "occurrence" or "personal and advertising injury" caused by an offense during the policy period,  the TPI Primary Policy excludes coverage for "'[b]odily injury,' 'property damage,' 'personal and advertising injury' caused by the rendering or failure to render any professional service . . ."

l.    The statutory damages awarded under the TCPA are punitive and/or penal damages and are not damages covered by a general liability policy as a matter of law and public policy.

m.    Claims for injunctive relief do not seek "damages" as that term is used in the TPI Primary Policy.

48.    Upon information and belief, Cash 1 disagrees with TPI's coverage position and maintains that TPI owes a duty to defend Cash 1 in the Underlying Suit.  Thus, an actual and immediate controversy exists among the parties.

49.    Pursuant to 28 U.S.C. §§ 2201 and 2202, TPI seeks a judicial determination that it has no duty to defend Cash 1 in the Underlying Suit under the TPI Primary Policy.

## COUNT II

### FOR DECLARATORY JUDGMENT THAT TPI DOES NOT OWE A DUTY TO INDEMNIFY

50.    TPI hereby incorporates and re-alleges the allegations in paragraphs 1 - 49 above as if fully set forth herein.

51.    TPI does not owe a duty to indemnify Cash 1 for any judgment or settlement awarded against it in the Underlying Suit under the TPI Primary Policy for the following reasons:

a.    The Underlying Suit does not allege a "bodily injury."

b.    The Underlying Suit does not allege "property damage."

c.    The Underlying Suit does not allege "personal and advertising injury."

d.    Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the primary policy period.

4830-5523-3814.1

e.   Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the primary policy period.

f.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

g.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the primary policy period, which it does not, the "Recording and Distribution of Material" exclusion bars coverage.

h.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy period, which it does not, the "Recording and Distribution of Material" exclusion bars coverage.

i.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the TPI Primary Policy excludes coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

j.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy period, which it does not, the TPI Primary Policy excludes coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

k.   Even if the Underlying Suit were to seek damages for "bodily injury," or "property damage" caused by an "occurrence" or "personal and advertising injury" caused by an offense during the policy period,  the TPI Primary Policy excludes coverage for "'[b]odily injury,' 'property damage,' 'personal and advertising injury' caused by the rendering or failure to render any professional service . . ."

l.   The statutory damages awarded under the TCPA are punitive and/or penal damages and are not damages covered by a general liability policy as a matter of law and public policy.

m.   Claims for injunctive relief do not seek "damages" as that term is used in the TPI Primary Policy.

52.   Upon information and belief, Cash 1 disagrees with TPI's coverage position and maintains that TPI owes a duty to indemnify Cash 1 in the Underlying Suit.  Thus, an actual and immediate controversy exists among the parties.

4830-5523-3814.1

- 19 -

53.     Pursuant to 28 U.S.C. §§ 2201 and 2202, TPI seeks a determination that it has no duty to indemnify Cash 1 under the TPI Primary Policy for any judgment or settlement which may be awarded against Cash 1 in the Underlying Suit.

## COUNT III

### FOR DECLARATORY JUDGMENT THAT CCC DOES NOT OWE A DUTY TO DEFEND

54.     CCC hereby incorporates and re-alleges the allegations in paragraphs 1-53 above as if fully set forth herein.

55.     CCC does not owe a duty to defend Cash 1 in the Underlying Suit under the Umbrella Policy for the following reasons:

a.   The Underlying Suit does not allege "bodily injury."

b.   The Underlying Suit does not allege "property damage."

c.   The Underlying Suit does not allege "personal and advertising injury."

d.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident" during the policy period.

e.   Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by an "incident" during the policy period.

f.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

g.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "incident" during the CCC Umbrella Policy period, which it does not, the "Do Not Call" exclusion bars coverage.

h.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" during the CCC Umbrella Policy period, which it does not, the "Do Not Call" exclusion bars coverage.

i.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy period, which it does not, the CCC Umbrella Policy excludes coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act

4830-5523-3818.1

- 20 -

would violate the rights of another and would inflict 'personal and advertising injury.'"

j.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy period, which it does not, the CCC Umbrella Policy excludes coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

k.   Even if the Underlying Suit were to seek damages for "property damage" caused by an "occurrence" or "personal and advertising injury" caused by an offense, the CCC umbrella policy, under the "Financial Service Company as Insured" endorsement, precludes coverage for "property damage" or "personal and advertising injury" arising out of the "[l]ending or arranging for the lending of money" and/or the "[r]epossession of real or personal property from a borrower or acting as an assignee for the benefit of creditors . . ."

l.   The statutory damages awarded under the TCPA are punitive damages and are not damages covered by a general liability policy as a matter of law and public policy.

m.  Claims for injunctive relief do not seek "damages" as that term is used in the CCC Umbrella Policy.

56.   Upon information and belief, Cash 1 disagrees with CCC's coverage position and maintains that CCC owes a duty to defend Cash 1 in the Underlying Suit.  Thus, an actual and immediate controversy exists among the parties.

57.   Pursuant to 28 U.S.C. §§ 2201 and 2202, CCC seeks a judicial determination that it has no duty to defend Cash 1 in the Underlying Suit under the CCC Umbrella Policy.

## COUNT IV

### FOR DECLARATORY JUDGMENT THAT CCC DOES NOT OWE A DUTY TO INDEMNIFY

58.   CCC hereby incorporates and re-alleges the allegations in paragraphs 1-57 above as if fully set forth herein.

59.   CCC does not owe a duty to indemnify Cash 1 for any judgment or settlement awarded against it in the Underlying Suit under the Umbrella Policy for the following reasons:

a.   The Underlying Suit does not allege "bodily injury."

b.   The Underlying Suit does not allege "property damage."

4830-5523-3814.1

c.   The Underlying Suit does not allege "personal and advertising injury."

d.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident" during the policy period.

e.   Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by an "incident" during the policy period.

f.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

g.   Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "incident" during the CCC Umbrella Policy period, which it does not, the "Do Not Call" exclusion bars coverage.

h.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy period, which it does not, the "Do Not Call" exclusion bars coverage.

i.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy period, which it does not, the CCC Umbrella Policy excludes coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

j.   Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy period, which it does not, the CCC Umbrella Policy excludes coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

k.   CCC has not duty to indemnify Cash 1 in the Underlying Suit under the CCC Umbrella Policy because the Umbrella Policy provides the same coverage as the "scheduled underlying insurance."

l.   The statutory damages awarded under the TCPA are punitive and/or penal damages and are not damages covered by a general liability policy as a matter of law and public policy.

m.   Claims for injunctive relief do not seek "damages" as that term is used in the CCC Umbrella Policy.

60.     Upon information and belief, Cash 1 disagrees with CCC's coverage position and maintains that CCC owes a duty to indemnify Cash 1 in the Underlying Suit.  Thus, an actual and

4830-5523-3814.1

immediate controversy exists among the parties.

61.     Pursuant to 28 U.S.C. §§ 2201 and 2202, CCC seeks a judicial determination that it has no duty to indemnify Cash 1 under the CCC Umbrella Policy with respect to the Underlying Suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Transportation Insurance Company (TPI) and Continental Casualty Company (CCC), respectfully pray for judgment against Cash 1 and Ms. Pratt as follows:

a.      Declaring that TPI has no duty to defend Cash 1 in the Underlying Suit;

b.      Declaring that TPI has no duty to indemnify Cash 1 in the Underlying Suit;

c.      Declaring that CCC has no duty to defend Cash 1 in the Underlying Suit;

d.      Declaring that CCC has no duty to indemnify Cash 1 in the Underlying Suit;

**e.**     Awarding TPI and CCC their costs for this suit; and

**f.**     Awarding TPI and CCC such other and further relief as this Court deems just.

DATED this 13th day of November, 2013

LEWIS BRISBOIS BISGAARD & SMITH LLP


By     /s/ *Jeffrey D. Olster*
_____
Jeffrey D. Olster
Nevada Bar No. 008864
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Attorneys for Plaintiffs
*TRANSPORTATION INSURANCE COMPANY and*
*CONTINENTAL CASUALTY COMPANY*

4830-5523-3814.1

1

**JURY DEMAND**

2

Pursuant to F.R.C.P. 38, Plaintiffs hereby demand a trial by jury in this matter.

3

4

DATED this 13th day of November, 2013

5

6

LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8

9

By       /s/ *Jeffrey D. Olster*

10

Jeffrey D. Olster
Nevada Bar No. 008864
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Attorneys for Plaintiffs
*TRANSPORTATION INSURANCE COMPANY and
CONTINENTAL CASUALTY COMPANY*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4830-5523-3814.1